UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CEDAR PARTY STORE, INC.,[1]

    Plaintiff,

v.

Case No. 02-74849

HONORABLE AVERN COHN

UNITED STATES OF AMERICA,
U.S. Department of Agriculture,
Food & Nutrition Service,

    Defendant.

_____/

**DECISION
SUSTAINING DISQUALIFICATION**

**I. Introduction**

This is a Food Stamp Program trafficking case.

Plaintiff owns and operates the Cedar Party Store in Detroit, Michigan. The store participates in the Food Stamp Program. On November 2, 2001, an Administrative Review Officer of the Food and Nutrition Service (FNS) of the United States Department of Agriculture sustained plaintiff's permanent disqualification from the Food Stamp Program on the grounds of food stamp trafficking.[2] Plaintiff, in a complaint filed December 6, 2002, challenged the disqualification essentially on the grounds that the evidence of record in the

---

[1] The complaint was in the name of George Gorgius. At the opening of trial the caption was amended to state Cedar Party Store, Inc., as plaintiff, the party authorized to deal in food stamps by defendant.

[2] The Code of Federal Regulations defines food stamp trafficking, in pertinent part, as "the buying or selling of coupons, ATP cards or other benefit instruments for cash or consideration other than eligible food." 7 C.F.R. § 271.2.

administrative proceeding was insufficient to sustain the charge. Because judicial review of disqualification is *de novo*, see 7 U.S.C. § 2023(a)(15), a one-day trial was held on plaintiff's claim on April 18, 2005. The Court finds that evidence of food stamp trafficking is overwhelming. A judgment will be entered sustaining the disqualification and dismissing the case.

## II. Background

### A. Cedar Party Store

The Cedar Party Store is a neighborhood market carrying a limited range of food products. The checkout counter has a single cash register and is protected by a plexiglass barrier. Foodstuffs to be checked out are placed on a circular platform which revolves in and out of the barrier. This enables the cashier to register the price of the foodstuffs in the cash register while at the same time being protected by the barrier.

### B. Food Stamp Trafficking

Congress established the Food Stamp Program "to safe-guard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." 7 U.S.C. § 2011. Given the importance of providing nutritional assistance for the needy, Congress has been firm in ensuring that food stamps are used only to purchase eligible food items and are not exchanged for cash or other things of value. Indeed, a store that is caught trafficking in food stamps even one time must be permanently disqualified from the Food Stamp Program, unless the Secretary of Agriculture determines that the store had in place an effective anti-trafficking policy. See 7 U.S.C. § 2021(b)(3)(B); 7 C.F.R. § 278.6(e)(1)(i).

## C. Electronic Benefit Transfer System

Food stamps are issued to eligible recipients through the Electronic Benefit Transfer system, commonly called EBT. EBT is an electronic system that allows a recipient to authorize transfer of benefits from an electronic account maintained at a central place in the name of the recipient to pay for eligible items using a plastic card at the point of sale in the retail store from which purchases are made. No money or paper food stamp coupons as formerly used are involved; thus, the EBT system is the modern replacement for traditional paper food stamps. Payment is made electronically to the retailer through a settlement process at the end of each day.

EBT provides a detailed audit trail which makes it relatively easy to identify fraudulent activity; one of the principal frauds is trafficking, buying or selling EBT benefits for cash. Built into EBT operations is a fraud detection system commonly referred to as ALERT (**A**nti-fraud **L**ocator using **E**BT **R**etailer **T**ransactions). ALERT operates as follows:

> Each EBT processor compiles a master batch file of all transactions that occurred in a single state every month and forwards this data to FNS. The electronic file is run through a series of format edits to ensure that the data is not corrupted. FNS does not alter or manipulate any transaction data, instead, format edits search for data anomalies; such as an alpha character in a numeric field. If an error occurs, the file is returned to the EBT processor for rectification and the corrected file is transmitted to FNS for re-inspection. Once a file passes inspection, it is loaded into the ALERT system and analyzed against defined parameters based on historical trafficking patterns. FNS has the ability to adjust these parameters as methods of fraud evolve. ALERT flags every transaction, or set of transactions, that hit on a parameter. It is possible for one transaction, or set of transactions, to hit on more than one parameter. The system then weighs and ranks a retail store based on the likelihood that violations occurred. An ALERT rank is determined by which pattern or combination of patterns hit, and the severity by which a parameter threshold is exceeded. ALERT data and standard reports are then made available on-line to FNS staff, FNS Compliance Branch, USDA's Office of Inspector General, and other approved agencies.

Food Stamp Fraud in an EBT Environment, Food and Nutrition Service Midwest Regional Office, U.S. Dep't of Agric. (May 2001).

### III. Discussion

Application of ALERT to the Cedar Party Store retail sales for the period September 2001 to February 2002 disclosed four patterns of activity carrying the badge of fraudulent activity, according to the historic experience of the Food Stamp Program:

- high-dollar transactions – transactions in excess of $100.00;
- multiple transactions by the same household on the same day;
- balance depletion by a single transaction; and
- rapid transactions by successive recipients.

On the basis of the analysis of a detailed accounting in each of the above categories, plaintiff was permanently disqualified from participation in the Food Stamp Program. These patterns of activity were found to be circumstantial evidence of trafficking in food stamps. This same evidence was offered by the government at trial.

Additionally at trial, the government introduced an accounting of a complimentary program, Women, Infants, and Children (WIC), for the same period as analyzed for the food stamp purchases. The combined accounting of sales for the two programs disclosed several months in which the total purchases of the two programs exceeded the sales reported by the accountant's monthly statement of sales.

Neither in the administrative proceedings nor at trial did plaintiff offer a satisfactory explanation of the patterns of transactions.

### IV. Conclusion

Title 7 U.S.C. § 2021(a) and 7 C.F.R. § 278.6(a) provide that evidence in the form of reports generated by the EBT system may serve as a basis for finding program violations and disqualification in circumstances disclosed by the record with regard to the operation of plaintiff.

Clearly there is no good reason to set aside the disqualification.

The foregoing constitute the findings of fact and conclusions of law under Fed. R. Civ. P. 52.

SO ORDERED.

  s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: May 4, 2005

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 4, 2005, by electronic and/or ordinary mail.

  s/Julie Owens
Case Manager
(313) 234-5160

S:\OPINIONS\May 2005\Cedar Party Store.Order.wpd

5